JENNIE R. MANCANIELLO, EXECUTRIX (ESTATE OF PETER MANCANIELLO) *v.* WILLIAM A. GUILE ET AL.

SUPERIOR COURT     HARTFORD COUNTY     FILE NO. 139194

Memorandum filed November 10, 1964

*Regnier, Moller & Taylor,* of Hartford, for the plaintiff.

*Schatz, Weinstein & Seltzer,* of Hartford, for defendant John Mancaniello.

*Halloran, Sage, Phelon & Hagarty,* of Hartford, for defendants William A. Guile and Richard H. Spencer.

*Carmody & Torrance,* of Waterbury, for defendant The Connecticut Light and Power Company.

*Robinson, Robinson & Cole,* of Hartford, for defendant The Southern New England Telephone Company.

MacDONALD, J. This is an action, by the executrix of the estate of a passenger in a motor vehicle who received fatal injuries in a highway accident, against the driver of the car in which he was riding, the driver and owner of a truck proceeding in the same direction and immediately in front of said car, and The Connecticut Light and Power Company and The Southern New England Telephone Company, which jointly maintained pole No. 494, located, according to the complaint, eight feet from the traveled portion of the highway on which the accident occurred. The two named utility companies have moved jointly, under §§ 297–306 of the Practice Book, for a summary judgment in their favor on the ground that no genuine issue exists as to any material fact involving them.

The complaint alleges that the plaintiff's decedent was riding in an automobile traveling in a northerly direction in the easterly lane of route 9 in Haddam; that the automobile in which he was riding was third in a line of automobiles; that as his driver, the defendant John Mancaniello, pulled out to pass the two cars ahead, the second car, a pickup truck, also pulled out to pass the first car, which action caused the vehicle operated by the defendant John Mancaniello to strike the left rear portion of the Ford pickup truck, cross the traveled portion of the

highway for southerly bound traffic, swerve onto the tar shoulder and into Connecticut Light and Power pole No. 494, located on the opposite or westerly shoulder of said highway, and thence back onto the highway, striking the Cerasoli vehicle, originally the first car in the line ahead of the Mancaniello car.

The allegations of fault directed against the two utility companies appear in paragraphs 8 and 9 of the second count, in which it is alleged that the construction and maintenance of the pole "was such as to incommode public travel in violation of § 16-228" (which, incidentally, does not apply to the defendant Power Company) and that the maintenance of the pole "in such proximity to a main thoroughfare constituted a public nuisance."

The two defendant utility companies supported their motion with affidavits accompanied by photographs showing the location of the pole in question with relation to the highway. The photographs are carefully identified and described in the affidavits and have been viewed and duly considered by the court as the type of "other available documentary proof" contemplated by § 299 of the Practice Book. This appears to be in accord with the only case found involving the use of photographs in connection with such motions. In *Berry* v. *Atlantic Coast Line R. Co.*, 273 F.2d 572 (4th Cir. 1960), an action against a power company and a railroad company for the death of a worker electrocuted when a crane came into contact with a power line, the supporting affidavits showed the railroad tracks to be twenty-seven feet from the power line and both maps and photographs were before the court when it considered the motion for summary judgment. Although the propriety of using the photographs was not questioned or directly passed upon,

the court does state, in the opinion granting defendant's motion for summary judgment (p. 578): "Aside from compliance with the rules and regulations of the Public Service Commission, a thorough study of the plats and photographs submitted indicates that the clearance between the railroad siding and the power line was more than ample to permit the safe unloading of the carload of steel by the use of a crane."

The measurements and other information contained in the affidavits, together with the pictures, show conclusively that the highway was straight and nearly level for a considerable distance in either direction from the scene of the accident; that it consisted of two ten-foot concrete lanes; that the pole in question was eight feet west of the outside edge of the westerly lane, in clear view from either direction, and that this was a greater distance from the edge of the highway than the width of the car in which decedent was riding. Since it appears from the complaint itself that the only way it was physically possible for this car to hit the pole was to cross into the wrong lane, continue across that lane and leave the highway completely, the only basis for liability of these two defendants seems to boil down to the claim that if the pole had not been there, the car would not have struck it. This is about all that is added by plaintiff's counter affidavit, which concludes with the statement: "That but for the construction of pole No. 494 in such dangerously close proximity to the public thoroughfare my late husband would not have incurred such terrible injuries and would be alive today."

Nothing in plaintiff's complaint or counter affidavit alters the physical facts presented, which satisfy the court that her claim is without merit as a matter of law against the two utility companies, and that,

upon trial, the court would have to direct a verdict in their favor.

It is true, under the federal court decisions which are presently relied upon until our Supreme Court has spoken upon many of the issues arising under this comparatively new procedure, that in situations where there is the slightest doubt as to the facts such doubt must be resolved at trial before court or jury. *Doehler Metal Furniture Co.* v. *United States,* 149 F.2d 130, 135 (2d Cir. 1945). And motions of this type have been denied where different conclusions or inferences could be drawn from evidentiary facts which, in themselves, are not in dispute. *Stevens* v. *Howard D. Johnson Co.,* 181 F.2d 390 (4th Cir. 1950); *White* v. *United States,* 317 F.2d 13 (4th Cir. 1963).

However, our Supreme Court has stated that summary judgment procedure is designed to dispose of actions in which there is no genuine issue as to any material fact and that the function of the trial court is to determine whether such issue of fact exists. *Rathkopf* v. *Pearson,* 148 Conn. 260, 263, 264. And when, as here, it is clear that the pleadings, affidavits and supporting documents reveal that there is no genuine issue of material fact and that a jury could reasonably arrive at but one conclusion, summary judgment should be entered. *Hamill* v. *Smith,* 25 Conn. Sup. 183; *Gancy* v. *Dohna,* 25 Conn. Sup. 138; see also the following federal cases arising under Rule 56 of the Federal Rules of Civil Procedure: *Green* v. *Illinois Cent. R. Co.,* 316 F.2d 728 (5th Cir. 1963); *Lopez* v. *Denver & R.G. W.R. Co.,* 277 F.2d 830 (10th Cir. 1960); *Algar* v. *Yellow Cab Co.,* 255 F.2d 538 (D.C. Cir. 1958); *Surkin* v. *Charteris,* 197 F.2d 77 (5th Cir. 1952).

The court concludes that there are no genuine issues of material fact with respect to these two

defendants and that they are entitled to judgment as a matter of law. Accordingly, their motion for summary judgment is granted.